Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ  85024

Telephone:  (602) 482-4300
Facsimile:    (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Laura Schlitt*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Laura Schlitt,<br><br>            Plaintiff,<br><br>     v.<br><br>Prudential Insurance Company of America, Camden Property Trust, Camden Property Trust Employee Disability Plan,<br><br>            Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Laura Schlitt (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

*Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

-1-

1  U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of
2  the United States.

### *Parties*

3. 
4.     2.    Plaintiff is a resident of Maricopa County, Arizona.

    3.    Upon information and belief, Defendant Camden Property Trust (hereinafter referred to as the "Company") sponsored, subscribed to and administered a group disability insurance policy which was fully insured and administered by Prudential Insurance Company of America (hereinafter referred to as "Prudential"). The specific Prudential policy is known as group policy 48946. The Company's purpose in subscribing to the Prudential policy was to provide disability insurance for its employees. Upon information and belief, the Prudential policy may have been included in and part of the Camden Property Trust Employee Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

    4.    Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policy to Prudential. Plaintiff believes that as it relates to her claim, Prudential functioned in a fiduciary capacity as the Plan and/or Claim Administrator.

    5.    Upon information and belief, Plaintiff believes Prudential operated under a conflict of interest in evaluating her claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit,* Prudential's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits.

6. The Company, Plan and Prudential conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

*Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits she may be entitled to as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about January 8, 2010 due to serious medical conditions and was unable to work in her designated occupation as a Regional Marketing Director. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10. Following her disability, Plaintiff applied for short term disability benefits which were approved and have been exhausted.

11. Plaintiff then applied for long term disability benefits under the relevant Prudential policy. The relevant long term disability policy provides the following definition of disability:

> You are disabled when Prudential determines that:
> - you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
> - you are under the regular care of a doctor; and

-3-

- you have a 20% or more loss in your monthly earnings due to that sickness or injury.

After 36 months of payments, you are disabled when Prudential determines that due to the same sickness or injury,

- you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience; and
- you are under the regular care of a doctor.

12. In support of her claim for long term disability, Plaintiff submitted to Prudential medical records from her treating physicians supporting her disability as defined by the relevant Prudential policy.

13. Prudential notified Plaintiff in a letter dated June 14, 2010 that it was approving her claim for long term disability benefits for the period of April 9, 2010 through May 31, 2010. Prudential informed Plaintiff in its June 14, 2010 letter it was terminating benefits beyond June 1, 2010 due to a lack of medical documentation supporting her inability to return to her regular occupation.

14. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the June 14, 2010 termination of her long term disability benefits by a letter dated July 25, 2010. In support of her appeal, Plaintiff again submitted additional medical evidence to Prudential.

15. As part of its review of Plaintiff's claim for long term disability benefits, Prudential obtained a medical record only review of Plaintiff's claim from Douglas Brown, M.D. who is a consulting physician for MES Solutions. Upon information and belief, Plaintiff believes Dr. Brown is a long time consultant for the disability insurance industry. Plaintiff further believes Dr. Brown has an incentive to protect his own consulting relationships with the disability insurance industry and Prudential by providing medical record only reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

16. Prudential informed Plaintiff in a letter dated August 27, 2010 it was upholding its prior determination to terminate benefits beyond June 1, 2010.

17. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Prudential's August 27, 2010 determination in a letter dated February 18, 2011. In support of her appeal, Plaintiff submitted to Prudential additional medical, vocational and lay witness evidence demonstrating she met any definition of disability set forth in the relevant Prudential policy.

18. In support of her appeal, Plaintiff submitted to Prudential a narrative letter dated March 29, 2011 from her current treating board certified family medicine physician who opined, "it is reasonable to assume that [Plaintiff] has been unable to work in any occupation since January 11, 2010…given her multiple chronic pain conditions, I believe it is reasonable to assume that she will be unable to sustain any gainful employment indefinitely."

19. In support of her appeal, Plaintiff submitted to Prudential a Functional Capacity Evaluation Report dated March 11, 2011 which determined after an evaluation of Plaintiff's serious medical conditions that "[her] tests indicate inability to perform tasks, even at the <u>sedentary work level,</u> due to her restrictions and limitations" (original emphasis).

20. Further supporting her appeal, Plaintiff submitted to Prudential a vocational report from a certified vocational expert dated April 27, 2011. The vocational expert concluded, "from a vocational standpoint, [Plaintiff] fully meets the criteria set forth by the Prudential disability policy or any other such policy or criteria as it relates to disability. [Plaintiff] is completely and totally disabled from any employment."

21. In addition to the medical records and reports submitted to Prudential, Plaintiff also submitted three (3) sworn affidavits from lay persons including an April 18,

1  2011 affidavit from Plaintiff's husband, a March 21, 2011 affidavit from Plaintiff's mother
2  and an April 18, 2011 affidavit from Plaintiff's sister who all confirmed Plaintiff is unable
3  to work in any occupation and her condition has not improved in any way since her date of
4  disability.

5        22.    As part of its review of Plaintiff's claim for long term disability benefits,
6  Prudential obtained a medical records only "paper review" of Plaintiff's claim from a
7  medical consultant who specializes in Psychiatry and Neurology.  Upon information and
8  belief, Plaintiff believes the retained medical consultant is a long time consultant for the
9  disability insurance industry.  Plaintiff further alleges the retained medical consultant has
10 an incentive to protect his/her own consulting relationships with the disability insurance
11 industry and Prudential by providing medical record only reviews which selectively review
12 or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and
13 report(s) which are favorable to insurance companies such as Prudential and which
14 supported the denial of Plaintiff's claim.

15       23.    In a letter dated May 13, 2011, Prudential notified Plaintiff it had denied her
16 appeal for long term disability benefits under the Prudential policy.  In the letter, Prudential
17 also notified Plaintiff that she had exhausted her administrative levels of review and could
18 file a civil action lawsuit in federal court pursuant to ERISA.

19       24.    Prudential failed to adequately investigate Plaintiff's case and failed to engage
20 Plaintiff and/or her treating physician in a dialogue during the appeal of her claim with
21 regard to what evidence was necessary so Plaintiff could perfect her appeal and claim.
22 Prudential's failure to investigate the claim and to engage in this dialogue or to obtain the
23 evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and
24 Ninth Circuit case law and a reason she did not receive a full and fair review.

25. Upon information and belief, the Prudential denied Plaintiff a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to, failing to consider all evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability, disregarding Plaintiff's self-reported symptoms, failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the combination of those diagnoses and impairments; failing to obtain an Independent Medical Examination when the policy allowed for one; failing to engage Plaintiff in a dialogue so she could submit the necessary evidence to perfect her claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

26. In evaluating Plaintiff's claim on appeal, Prudential had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [1]

27. Plaintiff believes the reason Prudential provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles Prudential undertook as decision maker and payor of benefits which created an inherent conflict of interest. Plaintiff believes Prudential's conflict of interest is evident in the fact that it approved her short term disability claim and paid the maximum short term disability benefits, but then when confronted with potential of paying client to

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

for many years in her long term disability claim; Prudential denied her long term disability claim even though Plaintiff's medical diagnoses and limitations had not changed and the short and long term disability policies contained essentially the same definition of disability. Due to its conflict of interest, when Prudential denied Plaintiff's long term disability claim it saved a significant sum of money.

28. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Prudential and any individual who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced Prudential's decision to deny her claim.

29. With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review the evidence in Plaintiff's claim *de novo,* because even if the Court concludes the Plan confers discretion, the unlawful violations of ERISA committed by the Plan and its administrators as referenced herein are so flagrant they justify *de novo* review.

30. As a direct result of Prudential's decision to deny Plaintiff's disability claim she has been injured and suffered damages in the form of lost disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

31. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

32. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' unjustified denial of payment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

1  A. For an Order requiring Defendants to pay Plaintiff disability benefits and any other employee benefits she may be entitled to as a result of being found disabled pursuant to the policy or Plan from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon, as well as any other employee benefits she may be entitled to from the Plan and/or Company as a result of being found disabled;

B. For an Order finding that Plaintiff meets any definition of disability set forth in the relevant Prudential policy and directing Defendants to continue paying Plaintiff the aforementioned benefits until such time she meets the conditions for termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

DATED this 11th day of July, 2011.

SCOTT E. DAVIS. P.C.

By:  */s/ Scott E. Davis*
     Scott E. Davis
     Attorney for Plaintiff